IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: ZOHAR III, CORP., Debtor. | ) | Chapter 11<br>Case No. 18-10512 (KBO)<br>(Jointly Administered) |
| LYNN TILTON, *et al.*, Appellants, | ) | Adv. Proc. No. 20-50534 (KBO) |
| v. | ) | |
| DAVID DUNN, AS TRUSTEE FOR THE ZOHAR LITIGATION TRUST, Appellee. | ) | Misc. No. 25-461 (MN) |

**MEMORANDUM OPINION**

Norman L. Pernick, G. David Dean, Jack M. Dougherty, COLE SHOTZ P.C., Wilmington, DE; Monica Loseman, GIBSON, DUNN & CRUTCHER LLP, Denver, CO; Reed Brodsky, Akiva Shapiro, GIBSON, DUNN & CRUTCHER LLP. New York, NY– Counsel for the Patriarch Stakeholders.

Ryan M. Bartley, Michael S. Neiburg, YOUNG CONAWAY STARGATT & TAYLOR LLP, Wilmington, DE; Jonathan E. Pickhardt, Ellison Ward Merkel, Brenna D. Nelinson, Zachary Russell, QUINN EMANUEL URQUHART & SULLIVAN LLP, New York, NY – Counsel for David Dunn, as Trustee for the Zohar Litigation Trust-A.

August 19, 2026
Wilmington, Delaware

Maryellen Noreika

**NOREIKA, U.S. DISTRICT JUDGE:**

This dispute arises out of the chapter 11 cases of Zohar III, Corp. and certain affiliates (together, "the Debtors" or "the Funds") in connection with the above-captioned adversary proceeding ("the Adversary Proceeding").[1] Lynn Tilton and certain affiliated entities (together, "Patriarch") have filed a motion for leave to appeal (D.I. 1) ("the Motion for Leave") the Bankruptcy Court's interlocutory *Order Directing Claw Back of Certain Documents and Striking Testimony* (Adv. D.I. 1156) ("the Claw Back Order"), dated August 28, 2025, along with its October 21, 2025 Memorandum Order denying Patriarch's motion for reconsideration of the Claw Back Order (Adv. D.I. 1245) ("the Reconsideration Order," and together with the Claw Back Order, "the Orders"). The Motion for Leave is fully briefed. (D.I. 1, 8, 12). Patriarch has also filed a Motion for Certification of its appeal to the United States Court of Appeals for the Third Circuit (D.I. 13) ("the Certification Motion"). The Certification Motion is also fully briefed. (D.I. 14, 15, 16). For the reasons set forth herein, the Court will deny the Motion for Leave and the Certification Motion.

## I. BACKGROUND[2]

### A. The Chapter 11 Cases and the Settlement Agreement

The Funds are collateralized investment funds created by Ms. Tilton. The Funds raised capital—approximately $2.5 billion—by issuing notes to investors who were, in exchange, entitled to interest payments over time, plus return of their principal at the maturity date. The Funds' assets were primarily loans originated to distressed businesses ("the Portfolio Companies").

---

[1] The docket of the Adversary Proceeding No. 20-50534 (KBO) (Bankr. D. Del.) is cited herein as "Adv. D.I. __," and the docket of the remaining Chapter 11 case, captioned In re Zohar III, Corp., No. 18-10512 (KBO) (Bankr. D. Del.) is cited herein as "Bankr. D.I. __."

[2] The following background, which appears largely undisputed, is taken from various prior opinions and orders issued in the bankruptcy proceedings and appeals, and it is included only to frame the requests for relief before the Court.

Notwithstanding the Funds' valuable assets, they defaulted on payments to noteholders, based in part on protracted litigation between Ms. Tilton and the Funds' controlling creditors concerning who owned certain interests in the Portfolio Companies.

On March 11, 2018, the Funds filed petitions for relief under Chapter 11. Various requests for relief followed, including a motion to reject a collateral management agreement, a motion for relief from the automatic stay, and two motions to dismiss the cases or appoint a Chapter 11 Trustee. On April 4, 2018, the Bankruptcy Court appointed then-bankruptcy judge, The Honorable Kevin Gross, to serve as mediator. (Bankr. D.I. 143). Following mediation, Debtors, Patriarch, MBIA Insurance Corp. ("MBIA") and certain other parties reached an agreement ("the Settlement Agreement") approved by the Bankruptcy Court on May 21, 2018. (Bankr. D.I. 266). The Settlement Agreement: (1) replaced Debtors' controller (Ms. Tilton) with an Independent Director (*id.* ¶ 1); (2) imposed an extended stay of litigation for 15 to 18 months to allow the parties to focus on converting the Funds' assets to cash (*id.* ¶ 19); and (3) established a process pursuant to which the parties would work jointly to monetize the Debtors' assets ("the Monetization Process"), including by selling or refinancing certain Portfolio Companies (*id.* ¶¶ 8, 10).

The Settlement Agreement also set out rules and procedures governing the resolution of potential breaches as well as disputes incident to the Monetization Process. With respect to any alleged material breach of the Settlement Agreement, the issue would be addressed in the first instance by Judge Gross; absent a resolution, he would issue a recommendation to the Bankruptcy Court, which would ultimately resolve it. (*Id.* ¶ 23). Similarly, the Settlement Agreement directed the parties to mediate disputes "with respect to the Monetization Process" confidentially with Judge Gross, and, if mediation failed, to bring the dispute to the Bankruptcy Court. (*Id.* ¶ 11).

Thus, during the Monetization Process, Judge Gross remained in the role of "on-call mediator," successfully resolving several disputes that arose under the Settlement Agreement.

Nonetheless, for reasons disputed by the parties, efforts to monetize individual Portfolio Companies through sales or refinancings stalled. In spring and summer of 2019, the parties attempted to negotiate a global restructuring as part of the mediation of the parties' Monetization Disputes. Although such a global restructuring was not something expressly contemplated by the Settlement Agreement, the Parties worked with Judge Gross to facilitate negotiations. Ms. Tilton made certain proposal(s) that would have allowed her to acquire certain of the Portfolio Companies herself, but those proposal(s) were rejected. Relevant here, in connection with private funding for Ms. Tilton's proposals, investment banker Jefferies Group LLC ("Jefferies") prepared individual valuations of the Portfolio Companies and prepared financing commitments ("the Jefferies Materials").

Ultimately, the global restructuring settlement discussions broke down, Judge Gross resigned as the mediator, and The Honorable Christopher S. Sontchi (who previously presided over the bankruptcy) took his place. Judge Sontchi later released the parties from their obligations under the Settlement Agreement and instructed them to raise issues related to the Monetization Process with the presiding bankruptcy judge, The Honorable Karen B. Owens.

On March 9, 2020, the Debtors filed a 33-count complaint initiating the Adversary Proceeding against Ms. Tilton and her Patriarch affiliates, asserting various causes of action arising from a myriad of agreements, transfers, and transactions, including claims for declaratory judgment, breach of contract, breach of fiduciary duty, tortious interference, actual fraud, constructive fraud, conversion, and unjust enrichment. (*See* Adv. D.I. 110 (redacted complaint)).

### B. <u>The Administrative Expense Claim and the Strike Order</u>

Relevant here, Patriarch filed an administrative expense claim against the Funds alleging that they had "failed to abide by their obligations under the Settlement Agreement to negotiate in good faith when considering monetization proposals advanced by Tilton" (Bankr. D.I. 2876) ("the Administrative Expense Claim"). The Debtors filed a motion to strike (Bankr. D.I. 3040) ("the

Motion to Strike") every reference in the Administrative Expense Claim to any proposal Ms. Tilton had made as violative of Rule 9019-5(d) of the Local Rules of Practice and Procedure of the United States Bankruptcy Court for the District of Delaware ("the Mediation Confidentiality Rule"). (Bankr. D.I. 3040). The operative version of the Mediation Confidentiality Rule states as follows:

> The mediator and the participants in the mediation are prohibited from divulging, outside of the mediation, any oral or written information disclosed by the parties or by witnesses in the course of the mediation. No person may rely on or introduce as evidence in any arbitral, judicial or other proceeding, evidence pertaining to any aspect of the mediation effort, including but not limited to: (A) views expressed or suggestions made by a party with respect to a possible settlement of the dispute; (B) the fact that another party had or had not indicated willingness to accept a proposal for settlement made by the mediator; (C) proposals made or views expressed by the mediator; (D) statements or admissions made by a party in the course of the mediation; and (E) documents prepared for the purpose of, in the course of, or pursuant to the mediation. In addition, without limiting the foregoing, Rule 408 of the Federal Rules of Evidence, any applicable federal or state statute, rule, common law or judicial precedent relating to the privileged nature of settlement discussions, mediations or other alternative dispute resolution procedures shall apply. Information otherwise discoverable or admissible in evidence does not become exempt from discovery, or inadmissible in evidence, merely by being used by a party in the mediation. However, except as set forth in the previous sentence, no person shall seek discovery from any participant in the mediation with respect to any information disclosed during mediation.

Del. Bankr. L.R. 9019-5(d)(i) (2021 version).[3] At a February 22, 2022 hearing, the Bankruptcy Court granted the Debtors' Motion to Strike, striking various allegations in the Administrative Expense Claim and broadly prohibiting disclosure of the global restructuring proposals. On February 24, 2022, the accompanying order was entered (Bankr. D.I. 3113) ("the Strike Order").

[3] The Bankruptcy Court determined that the prior version of the Mediation Confidentiality Rule in place until January 31, 2022 is the operative version. (Adv. D.I. 440 at 1 n.4).

The Strike Order[4] was considered on appeal by The Honorable Thomas L. Ambro, United States Circuit Judge, sitting by designation for the District Court. *Patriarch Stakeholders v. Zohar III, Corp. (In re Zohar III, Corp.)*, Case No. 1:22- mc-00119-TLA, D.I. 22 (filed under seal) & D.I. 24 (redacted version) (D. Del. Jul. 25, 2023). In that appeal, Patriarch conceded that Ms. Tilton's global restructuring proposals, which included the Jefferies Materials, were made "with respect to" the Monetization Process but argued that they were not made in connection with mediation because Paragraph 11 of the Settlement Agreement only required mediation over "disputes" with respect to the Monetization Process. (*Id*. at 10). No "dispute" occurred, Patriarch argued, because "the parties *agreed* on the process and *agreed* that, rather than pursue piecemeal monetization of Portfolio Companies, Ms. Tilton would attempt to propose a global restructuring that would be acceptable to the Debtors." (*See id*. (quoting argument)). Judge Ambro rejected this argument:

> But while the Funds may have agreed to entertain Tilton's global restructuring proposals after the failure of piecemeal monetization, their steadfast rejection of Tilton's terms—which were often transmitted via Judge Gross—equaled a "dispute" in common parlance. *Compare* Oxford American Dictionary 502 (defining "dispute" as "a disagreement, argument or debate"), *with* Opening Br. 26 n.15 (observing that the Funds "did not agree to any of Ms. Tilton's proposals"). Their negotiation was therefore a "dispute with respect to the Monetization Process" within the meaning of Paragraphs 8 and 11 of the Settlement Agreement.

*Id.* Based on this and other observations, Judge Ambro concluded that the parties "were negotiating as part of a court-ordered mediation with the Mediation Rule in effect." (*Id*. at 12).

[4] The Strike Order was, by then, a final order by virtue of two Bankruptcy Court's orders adjudicating the Administrative Expense Claim, which were not appealed, and were therefore final orders. (Bankr. D.I. 3401, 3402).

Patriarch further argued that, even if the Debtors are correct that there was a court-ordered mediation related to these global restructuring discussions, the Debtors waived[5] the protection of mediation confidentiality during the 2019 bankruptcy proceedings of Portfolio Company Dura Automotive Systems, LLC, in which the Debtors elicited testimony from a Jefferies representative regarding the Jefferies Materials in order to evince Dura's value. On cross-examination by the Funds, Jefferies' representative testified:

> [T]here were four companies that Ms. Tilton would acquire with financing from Jefferies. Our financing was composed of approximately $705 million of bank debt commitment. That was a commitment that we would stand behind but we'd ultimately syndicate to the market. And then, as I testified to previously, the remainder of north of $200 million of preferred equity—that would have been invested in a new hold to acquire those companies.

(*Id.* at 15-16 (citing *In re Dura Auto. Sys., LLC,* Case No. 19-06741 (Bankr. M.D. Tenn.), D.I. 198 (Oct. 23, 2019 Hr'g Tr.)). Based on this testimony, Patriarch argued that the Funds "deliberately put at issue certain material facts concerning Ms. Tilton's efforts to monetize and/or refinance Dura in connection with the global restructuring proposals," resulting in waiver of the confidentiality protection. (*See id*. at 15). In rejecting this argument, Judge Ambro explained:

> A holistic review of this testimony undermines Patriarch's claim that the Funds were intentionally "elicit[ing] detailed public testimony of Ms. Tilton's restructuring proposals . . ." In fact, they were attempting to surmise Dura's value to potential purchasers while opposing Tilton's efforts to serve as the debtor-in-possession lender to Dura. The ***aim of the Funds' cross-examination*** was so far afield from the heartland of Tilton's global restructuring proposals in mediation that using the former to unmask the latter would not make sense. For similar reasons, Patriarch is wrong to suggest that the Funds' "partial waiver" allowed them to "present a one-sided story to the court" to Patriarch's detriment.

---

5 In determining that the "[t]he Funds also did not waive the Mediation Rule's protections," Judge Ambro explained that "[w]hat the parties and case law describe as 'waiver,' in fact, concerns forfeiture. A waiver is the intentional relinquishment or abandonment of a known right. Forfeiture, by contrast, occurs inadvertently. The latter fits our facts." *In re Zohar III, Corp.*, Case No. 1:22- mc-00119-TLA, D.I. 22, at 15 n.5.

*Id.* at 16 (internal citations omitted) (emphasis added). Rejecting these (and other) arguments, Judge Ambro affirmed the Strike Order. On further appeal by Patriarch, the Third Circuit also considered the waiver issue:

> In the context of the attorney-client privilege, this Court has instructed that parties may not use privileged information both as a "shield" and a "sword." If a party agrees to disclose only favorably privileged documents while keeping for itself the unfavorable ones to gain an advantage in litigation, this partial disclosure may constitute an implied waiver. Courts consider whether one party took advantage of another and if partial disclosure created an unfair advantage when deciding whether partial disclosure forfeits a privilege as to all or some of privileged information.

*In re Zohar III, Corp.,* 2024 WL 1929021, at *4 (3d Cir. Apr. 23, 2024) (internal quotations and citations omitted). The Third Circuit agreed with Judge Ambro that the Debtors' use of testimony concerning the Jefferies Materials did not constitute waiver in light of their purpose in eliciting the testimony:

> Considering the posture at which this information was elicited on cross-examination at a different bankruptcy proceeding, it is not evident that the Debtors sought to use the information as a "sword" or that it took advantage of Patriarch Stakeholders. The information elicited on cross-examination was in connection to the Portfolio Company's value, not the global restructuring proposals made during mediation. It was not an attempt to "present a one-sided story" using this information and would be inappropriately viewed as a forfeiture of confidentiality. Patriarch's argument that the District Court's "focus on 'aim,'" was legal error contravenes this Court's case law, which expressly examines and contemplates the purpose for which information is offered in determining waiver.

*Id.* (internal quotations and citations omitted). Discerning no abuse of discretion in the Bankruptcy Court's decision not to lift the Mediation Confidentiality Rule, the Third Circuit affirmed the District Court's decision to uphold the Strike Order. *Id.,* at *6.

### C. The Adversary Proceeding, the Claw Back Order, and Reconsideration Order

In connection with the Adversary Proceeding, Patriarch sought to develop discovery with respect to the Jefferies Materials. These materials, Patriarch asserts, are essential to its defenses, as they may show that, at the time the Debtors assumed control of the Portfolio Companies, they were left with sufficient value to pay off their creditors. "The Jefferies Valuation information thus challenges whether the Debtors suffered any damages at all; if they did, whether Patriarch [was] the cause of them; and whether the Debtors failed to mitigate such damages." (D.I. 1 at 8).

In response to Patriarch seeking this discovery, the Debtors' successor in interest, the Zohar Litigation Trust-A ("the Trust"), as plaintiff in the Adversary Proceeding, sought an order from the Bankruptcy Court (1) preventing Patriarch from introducing exhibits and seeking testimony about topics purportedly protected under the Mediation Confidentiality Rule; (2) striking certain related deposition testimony; and (3) directing Jefferies to claw back certain documents on topics that the Trust claimed fell within the Mediation Confidentiality Rule. (Adv. D.I. 1009). On August 28, the Bankruptcy Court granted the Trust's motion (Adv. D.I. 1156) ("the Claw Back Order"). The Claw Back Order directed the claw back of documents produced in discovery by Jefferies relating to any "Precluded Matter" which consist of "(a) the fact that any proposal was made during the mediation; (b) the terms of any proposals during the mediation; (c) any party's formulation of a proposal to be made in the Mediation; (d) any party's assessment of a proposal received in the mediation; and (e) communications among the parties to the mediation concerning any potential or actual proposal made in the mediation." (*Id.*). The Claw Back Order also struck portions of deposition testimony that relate to a Precluded Matter. (*Id.*).

Patriarch filed a Motion for Reconsideration (Adv. D.I. 1160) of the Claw Back Order, arguing that the Claw Back Order overlooked and contradicted the Third Circuit's binding determination that the Jefferies Materials are not subject to the mediation confidentiality pursuant

to the applicable Local Rule 9019-5. In so arguing, Patriarch relied on that portion of the Third Circuit's ruling explaining that "[t]he information elicited on cross-examination [in the Dura bankruptcy proceeding] was in connection to the Portfolio Company's value, not the global restructuring proposals made during mediation." *In re Zohar III,* 2024 WL 1929021, at *4.

The Bankruptcy Court denied the Motion for Reconsideration. "The Third Circuit did not make a whole-cloth determination that the Jefferies Materials are excepted from mediation confidentiality. Therefore, the Court's decision to order claw-back of the Jefferies Materials as a Precluded Matter does not violate any alleged 'binding determination' imposed upon it by the appellate decision." (Reconsideration Order at 6). The Bankruptcy Court further rejected Patriarch's attempt in its reply to reframe its position:

> Perhaps recognizing that its description of the Third Circuit's decision on the Strike Order is, putting it kindly, a stretch too far, Patriarch back-pedals in its reply paper and re-frames its position. It contends that the Court erred when it concluded that the Jefferies Materials are a Precluded Matter by ignoring an alleged central distinction of the Third Circuit between portfolio company valuation information and the Holdco Deal.[6] But the Court need not entertain this new argument made in the reply. And regardless, ***Patriarch's reliance on this distinction for purposes of determining what is a Precluded Matter (as opposed to whether forfeiture occurred) is misplaced.*** The Jefferies Financing and the underlying PC Valuations are intertwined with the Holdco Deal, which is a Precluded Matter. It would not be fair to allow Patriarch to use the Jefferies Materials as evidence of value in these proceedings because the Trust would be foreclosed from using any relevant Precluded Matter to rebut, implicating the very concern of prejudice explored by the Third Circuit to reach its forfeiture decision.

(*Id.* (footnote omitted).) Accordingly, the Motion to Reconsider was denied.

---

6 The "Holdco Deal" is defined in the Reconsideration Order as "the terms of a global restructuring proposal made as part of the Court-ordered mediation of the parties' monetization disputes." (Adv. D.I. 1245 at 3).

Patriarch's Motion for Leave and Certification Motion followed, each presenting for certification the following questions on appeal: (1) whether the Mediation Confidentiality Rule broadly precludes the disclosure and use, in litigation, of underlying information for the sole reason that it was later incorporated into an offer made in mediation, and (2) whether the Third Circuit's prior determination that underlying portfolio company valuations are separate from global restructuring proposals that employ them authorizes the introduction and use of those valuations in litigation. (D.I. 1 at 4; D.I. 13 at 4).

## II. JURISDICTION AND APPLICABLE STANDARD

This Court has jurisdiction to hear appeals "with leave of the court, from . . . interlocutory orders and decrees of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title." 28 U.S.C. § 158(a)(3). Section 158(a) does not identify the standard district courts should use in deciding whether to grant such an interlocutory appeal. *See id.* "Typically, however, district courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals." *In re AE Liquidation, Inc.*, 451 B.R. 343, 346 (D. Del. 2011).

Under the standards of section 1292(b), an interlocutory appeal is permitted only when the order at issue (1) involves a controlling question of law as to which there is (2) substantial ground for difference of opinion, and (3) if appealed immediately, may materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(b); *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974). Entertaining review of an interlocutory order under section 1292(b) is appropriate only when the party seeking leave to appeal "establishes exceptional circumstances justify a departure from the basic policy of postponing review until after the entry of final judgment." *In re Del. and Hudson Ry. Co.*, 96 B.R. 469, 472-73 (D. Del. 1989), *aff'd*, 884 F.2d 1383 (3d Cir. 1989). In part, this stems from the fact that "[p]iecemeal litigation is generally disfavored by the

Third Circuit." *In re SemCrude, L.P.*, 2010 WL 4537921, at *2 (D. Del. Oct. 26, 2010) (citing *In re White Beauty View, Inc.*, 841 F.2d 524, 526 (3d Cir. 1988)). Further, leave for interlocutory appeal may be denied for "entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue." *Katz*, 496 F.2d at 754.

As explained in the District Court opinion (*In re Zohar III*, Case No. 1:22- mc-00119-TLA, D.I. 22, at 9), the Bankruptcy Court's factual determination of whether a waiver occurred, and its application and interpretation of its own local rules, are reviewed for abuse of discretion. *Cf. In re Chevron Corp.*, 633 F.3d 153, 161 (3d Cir. 2011) (waiver); *see Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (local rules). "An abuse of discretion may occur as a result of an errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact." *McDowell v. Phila. Hous. Auth. (PHA)*, 423 F.3d 233, 238 (3d Cir. 2005).

## III. <u>ANALYSIS</u>

### A. <u>Controlling Question of Law</u>

"A controlling question of law must encompass at the very least every order which, if erroneous, would be reversible error on final appeal." *Katz*, 496 F.2d at 755. "'[C]ontrolling' means serious to the conduct of the litigation, either practically or legally. And on the practical level, saving of time of the district court and of the expense to the litigants [has been] deemed . . . to be a highly relevant factor." *In re Boy Scouts of Am.*, 2021 WL 1174573, * 4 (D. Del. Mar. 29, 2021) (internal citation omitted).

In applying the Local Rule which governs the mediation privilege to an identified set of documents and testimony, the Bankruptcy Court considered the context and circumstances surrounding the preparation of the documents in question, as well as the parties' actions, documentary evidence, and representations made by counsel, and concluded that the documents and testimony in question were privileged. (*See e.g.*, Reconsideration Order ¶¶ 9, 11-12). The Claw

Back Order and Reconsideration Order applied settled law to the particular facts of this case. *See In re Royce Homes LP*, 466 B.R. 81, 94 (S.D. Tex. 2012) (declining to grant leave because "[d]etermining whether the privilege applies to the documents and, if so, whether Speer waived it, are fact-intensive questions, as the bankruptcy court's thorough opinion demonstrates"); *In re EP Liquidation, LLC*, 2015 WL 4634834, at *4 (D. Del. Aug. 4, 2015) (explaining that a denial of discovery "does not call into question a controlling issue of law, but rather disputes the Bankruptcy Court's exercise of its discretion"). The appeal therefore does not present a pure question of law "that the reviewing court could decide quickly and cleanly without having to study the record." *In re Cross Media Mktg. Corp.*, 2007 WL 2743577, at *2 (S.D.N.Y. Sept. 19, 2007) (internal citations omitted).

**B. <u>Substantial Ground for Difference of Opinion as to its Correctness</u>**

"The 'controlling question of law' also must be one as to which there is 'substantial ground for difference of opinion.'" *In re Boy Scouts of Am.,* 2021 WL 1174573 at *4 (quoting 28 U.S.C. § 1292(b)). "This calls for more than mere disagreement with the ruling of the bankruptcy court." *Id.* To satisfy this standard, "the difference of opinion must arise out of genuine doubt as to the correct legal standard." *Hulmes v. Honda Motor Co.*, 936 F. Supp. 195, 208 (D.N.J. 1996), *aff'd,* 141 F.3d 1154 (3d Cir. 1998).

Privilege rulings generally "involve the routine application of settled legal principles." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 110 (2009). Local Rule 9019-5(d) and the Third Circuit's ruling provide the appropriate standard here. As noted in the Reconsideration Order, the Bankruptcy Court has decided this issue on five separate occasions now, in each case ruling that the mediation privilege applies to documents and information prepared in connection with the offers that were made by Ms. Tilton in the mediation overseen by Judge Gross. (*See* Reconsideration Order ¶ 3). The Third Circuit has affirmed, holding that the "Bankruptcy Court soundly found no

forfeiture of Local Bankruptcy Rule 9019-5(d)'s protections" and noting approvingly that, in its review, "[t]he District Court . . . appl[ied] factors considered by other Courts of Appeals and assuming that Patriarch had a special need for the information. It held that there resulted no unfairness as all parties knew of the confidential nature of mediation when entering and there exists a significant public interest in maintaining the confidentiality of settlement and mediation discussions." *In re Zohar III*, 2024 WL 1929021, at *3–5.

Patriarch's Motion for Leave does not suggest that there is a disagreement as to the applicable legal standard; rather, it challenges the Orders on the basis that they are inconsistent with Patriarch's own interpretation of the Third Circuit's ruling. "Because the Third Circuit previously made the legal determination that information concerning a 'Portfolio Company's value is separate and distinct from global restructuring proposals made during mediation,' the Bankruptcy Court's refusal to follow such a determination is inherently a legal issue." (D.I. 12 at 3 (quoting *In re Zohar III*, 2024 WL 1929021, at *4)).

The Court is not persuaded that the Bankruptcy Court's Orders are in any way contrary to the Third Circuit decision. Patriarch merely seeks a different interpretation of that decision, one that takes the Third Circuit's observation—that a "Portfolio Company's value" is separate and distinct from "global restructuring proposals made during mediation"—out of the context of the implied waiver analysis, and holds that it is controlling for the purposes of determining what is a "Precluded Matter." *See In re Zohar III*, 2024 WL 1929021, at *4 ("this Court's case law . . . expressly examines and contemplates the purpose for which information is offered in determining waiver"). Setting aside the merits of this argument, disagreements regarding the application of a settled legal standard do not rise to the level of a "difference of opinion" required to meet this prong. *See Essar Steel*, 607 B.R. at 416-17. If Patriarch's Motion for Leave were granted, however, the Court would apply the same analysis as the Bankruptcy Court and reach the same conclusion: that

the distinction drawn by the Third Circuit in determining whether implied waiver occurred does not change the universe of "Precluded Matters" set by the Bankruptcy Court years ago. Accordingly, the difference of opinion asserted by Patriarch does not arise out of a genuine doubt as to the correct legal standard.

### C. Material Advancement of the Ultimate Termination of the Litigation

Of the three factors for interlocutory appeal under section 1292(b), "courts place particular weight on whether immediate appeal will materially advance the ultimate termination of the litigation." *In re Paragon Offshore PLC*, 2020 WL 1815550, at *3 (D. Del. Apr. 9, 2020) (citation and internal quotations marks omitted). An interlocutory appeal "materially advances" the litigation if it would "(1) eliminate[] the need for trial, (2) eliminate[] complex issues so as to simplify the trial, or (3) eliminate[] issues to make discovery easier and less costly." *Id.* (citation and internal quotation marks omitted). Patriarch argues that interlocutory review could "avoid the risk of having to redo portions of discovery, dispositive motions, and trial if the Patriarch Stakeholders win the appeal." (D.I. 1 at 12). Although this point is well taken, it is not sufficient to warrant relief where the remaining section 1292(b) factors are not satisfied.

## IV. CONCLUSION

For the reasons explained above, the Court will deny the Motion for Leave. Accordingly, the Motion for Certification is also denied. An appropriate order follows.